Cowan *versus* Wheeler.

It is not allowable for an officer, by his testimony as a witness, to contradict his return that, upon a levy of land, he had delivered seizin to the judgment creditor.

The receiving of seizin in such a case, *if ratified* by the judgment creditor, is effectual, although the person receiving it had no *previous authorization*.

In a levy of land by the number of its lot and by reference to the deed from the debtor's grantor, there is a sufficient description by metes and bounds, within the import of the statute.

WRIT OF ENTRY. The land formerly belonged to Isaac Cowan.

*Lancaster*, for the demandant, contends, that the land vested in the demandant by force of a devise in Isaac Cowan's will, and also under a conveyance from Isaac Cowan to Alfred Cowan, made after the date of the will, and a release from Alfred Cowan to the demandant.

*D. Williams*, for the tenant, contends, that the land became the property of the tenant by the levy of an execution in favor of the Augusta bank against said Isaac Cowan, upon an attachment made prior to his said deed to Alfred Cowan, and by a conveyance from the bank to the tenant and one Shaw, and by Shaw's release of his part to the tenant.

To repel the tenant's claim, the plaintiff insists, that the levy, was invalid upon the following grounds, besides some others which failed for want of proof, viz : —

1. The land was not set off by metes and bounds. 9 Mass. 92.

2. The person to whom the seizin was delivered by the officer had no authority to receive it.

3. The bank attached not only the land, but also personal property more than sufficient to pay the judgment, and were bound to levy the execution upon the personal property, before the land could be taken.

The facts proved will appear in the opinion of the Court.

HOWARD, J. — This case is submitted to us for decision, upon a report of the evidence, with power to draw such inferences as a jury would be authorized to draw from the facts stated in the report.

Both parties assert title to the demanded premises through Isaac Cowan, senior. The demandant claims by will, dated July 5, 1823, and approved and allowed, May 12, 1829. The testator died in July, 1828. In December, 1825, the testator

conveyed the premises, called the bog lot, to his son, Alfred Cowan; but this deed was not recorded, and there is evidence tending to show that it has been lost. In December, 1845, Alfred conveyed to the demandant, and the latter claims under the testator by deed, as well as by will.

The tenant, in support of his claim of title, proves that the Augusta Bank held a note against Isaac Cowan, senior, as principal, and James Shaw and himself, as sureties, for $200, upon which the bank instituted a suit, and attached the premises, in October, 1825, together with personal property of the principal; *that judgment was obtained,* December, 1826, for $232,95; and that a levy was made, January 13, 1827, on the premises, appraised at $174; and that the bank conveyed them to the tenant and Shaw, by deed of quitclaim, dated January 10, 1828, but not acknowledged, or delivered, till November 30, 1831. It was admitted that the tenant had acquired Shaw's interest in the premises, prior to the commencement of this action.

It appeared that the personal property attached, was receipted for; that it was worth more than enough to pay the execution; that it was demanded of the receiptor, by direction of Judge Bridge, the president of the bank, within thirty days from the recovery of judgment; and that the receiptor was responsible.

On the morning of the day when the levy was made, and before it was effected, a note was taken, by direction of the president, payable to the bank, or order, in 60 days, for $200, signed by Wheeler and Shaw as principals, and Baxter Crowell as surety.

This note was paid at maturity by the principals; and the balance of the execution was paid by them, within a year from the levy, in pursuance of an agreement with the bank.

The objections to the sufficiency of the levy will be noticed in the order in which they are presented in the written argument for the demandant.

1. It is alleged that the levy was insufficient, because the premises, upon which the execution was extended, were not

set out by the appraisers, or in the officer's return, by metes and bounds, as required by the statute of 1821, chap. 60, sect. 27 ; and because the levy does not embrace any land excepting in the town of Sidney.

The appraisers describe the land shown to them, and appraised, as "lot numbered two hundred and ten, in the town of Sidney, on Jones and Prescott's plan, containing two hundred acres, more or less, being the property of Isaac Cowan, one of the debtors, and the same he purchased of Robert G. Shaw, December 28, 1822." The officer returned that he had caused the execution to be levied upon the real estate described in the appraisers' return. This constitutes a description by metes and bounds within the requirement of the statute of 1821, chap. 60, sect. 27 ; Boylston v. Carver, 11 Mass. 517 ; Buck v. Hardy, 6 Maine, 162 ; Rollins v. Mooers, 25 Maine, 195.

The demandant claims the "north half of lot numbered 210, in the fifth range in Sidney and Belgrade, commonly called the bog lot." It is not pretended that the lot described in the levy, is not the same as that claimed, in part, by the demandant, but it is contended that the extent covered only such portion of the lot as was situated within the limits of the town of Sidney. The whole lot, however, appears to have been appraised and taken, and there is no evidence in the case to prove that it was not all located in Sidney, as stated in the return upon the execution. This objection cannot prevail.

2. The bank adopted the act of Cummings in receiving seizin and possession from the officer, and that is an answer to the objection that he had no authority to receive seizin.

3. The objection "that seizin was not delivered, and the levy not completed, in a reasonable time," is not supported by proof. But it appears that the levy was made and seizin delivered within thirty days from the date of the judgment; and that the levy was recorded within three months from the time it was made. It was not competent for the officer to contradict his return, in the manner proposed. This objection, therefore, fails.

4. The demandant contends, also, that the bank could not legally take the real estate of their principal debtor, when they had sufficient of his personal property attached to pay the execution and costs. The statute of 1821, c. 60, § 27, under which the levy was made, does not require the creditor to take personal estate of his debtor, in preference to his real estate, where either can be had. If " the creditor can find no personal estate to his acceptance, wherewith to satisfy his execution, and shall think proper to levy his execution upon his debtor's real estate," he may effect a levy thereon. The personal estate may be of a description not suited to be taken on execution; the ownership may be in dispute, and the property so situated that its seizure may involve the creditor in a legal controversy, and it may not be " to his acceptance." Practically, with us, personal estate would, generally, be preferred ; but the law gives the creditor the right to take the real estate of his debtor, when the latter fails to satisfy the judgment, or to expose personal estate for that purpose, acceptable to the former. *Herring* v. *Polley*, 8 Mass. 120.

5. It is objected that the note given by Wheeler and Shaw, as principals, with Crowell as surety, was payment of the execution, *pro tanto*, at least, and that the levy subsequently, for much more than was due upon it, would be void.

Though the legal presumption is, that the taking a negotiable promissory note of the debtor, for a simple contract debt, will extinguish it, yet such presumption does not arise, where the debt is founded on judgment, or where the facts repel the presumption. And payment by any of the joint debtors, though sureties only, on the original demand, after levy, and within the year, would, unexplained, be presumed in law to have been made for redemption, rather than for a purchase of the premises. But the explanations of this payment, by the tenant, are satisfactory. His title stands upon that of the bank. Shaw testifies, that he and Wheeler were sureties for Cowan, senior, that they had no security for their liability on the execution, and that they " made a bargain with Judge Bridge to pay the debt to the bank, and to take the land levied

upon, Mr. Bridge remarking, that the bank did not want the land, but their pay, and that, in pursuance of this bargain, the bank did give us a deed of the bog lot." It appears that the note in question was not given or received in payment, but as collateral security for the debt, and that it was paid in connexion with the balance of the execution, and interest, and costs, to fulfil the bargain with the bank, and purchase in their levy. The transaction appears to have been consistent with the rights of all parties, and is sustainable in equity, and at law. *Nickerson v. Whittier*, 20 Maine, 223. The levy was therefore effective and available to the bank and its grantees.

The testimony of Louis O. Cowan tends to show, from the admissions of the tenant, that means or funds were furnished by or for the principal debtor, and that they were received by the sureties, one or both, for the purpose, and accordingly applied and paid to the bank, within the year, " to redeem and liberate the land;" but it does not show that the supposed means or funds were sufficient for that purpose, or that the demandant accomplished the redemption.

The tenant, having the title acquired by the levy of the bank, is entitled to judgment.